UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JEFFERSON PARISH CONSOLIDATED GARBAGE DISTRICT NO. 1, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 09-6270** |
| **WASTE MANAGEMENT OF LOUISIANA, L.L.C., ET AL.** | **SECTION: "B" (4)** |

## ORDER

Before the Court is **Waste Management's Motion to Reconsider Motion to Compel the Production of Documents (R. Doc. 125)** filed by the Defendant, Waste Management of Louisiana, L.L.C. d/b/a Waste Management of New Orleans ("Waste Management") seeking reconsideration of this Court's order denying Waste Management's previously filed Motion to Compel due to Waste Management's failure to comply with Local Rule 7.4.[1] (*See* R. Doc. 124.) The Plaintiffs, the Parish of Jefferson and Consolidated Garbage District No. 1 (collectively, "the Plaintiffs") oppose the motion. (R. Doc. 134.) The motion was heard with oral argument on March 16, 2011. (R. Doc. 150.) Subsequently, on April 23, 2011, the parties participated in a Discovery Conference before the undersigned relative to the subject motion. At the conference, the Court ordered supplemental briefing from each of the parties. (R. Doc. 165.) Thereafter, Waste Management filed supplemental

---

[1] As a preliminary matter, the Court notes that at the March 16, 2011, hearing, the Court indicated that although Waste Management filed its motion as a motion to reconsider its denial based on Rule 7.4 grounds, Waste Management, in its briefing, argued the merits of the motion. As such, the Court construed the motion as a new Motion to Compel which properly complied with Local Rule 7.4.

memoranda in support of their motion (R. Docs. 167, 172).  The Plaintiffs filed their responses.  (R. Docs. 168, 171.)

**I.      Background**

Defendant, Travelers Casualty and Surety Company of America, removed this case to Federal Court on September 14, 2009.  (R. Doc. 1.)  The instant action arises out of the alleged breach of various contracts pertaining to waste disposal in Jefferson Parish.  Plaintiff, Consolidated Garbage, filed this action seeking a declaratory judgment that their Landfill Contract with Jefferson Parish be terminated without penalty or expense.  The Plaintiff seeks a judgment that awards damages and a declaratory judgment relating to certain rights and obligations under the contracts.

On June 29, 2010, Waste Management filed a counterclaim against Consolidated Garbage for alleged breaches of their Collection Contract and Landfill Contract with Jefferson Parish.  Waste Management seeks damages plus interest and attorney's fees.  On January 13, 2011, Waste Management filed the instant motion which seeks to supplement its counterclaim against Consolidated Garbage by adding a seventh claim.

Specifically, Waste Management contends that the Jefferson Parish Environmental Affairs Department drafted a Request for Proposal (RFP) to meet the needs of the Jefferson Parish Recycling Committee.  This draft was submitted to the President of the Jefferson Parish Administration, Aaron Broussard, and the Chief Administrative Officer, Tim Whitmer, for approval.

Waste Management contends that Broussard and Whitmer improperly revised the RFP, which was issued in September 2008 as RFP No. 176.  Waste Management contends that the RFP was worded "so broadly that it solicited proposals to divert any type of waste in any quantity from

the Parish landfill." (R. Doc. 104-3, p. 5.) Waste Management also contends that the process of obtaining bids was improperly rushed so as to purposely permit River Birch to obtain the contract. Specifically, on December 9, 2009, River Birch submitted its response to RFP No. 176, which offered a contract that would result in the diversion of 100% of the waste from Jefferson Parish Sanitary Landfill to River Birch Landfill, conditioned on Jefferson Parish permanently closing its landfill. The proposed contract also required that the Parish prematurely cancel the contract with Waste Management. Waste Management contends that the offer was not properly reviewed, and that this was part of a scheme in which Broussard, Whitmer, Wilkinson, and River Birch had with a specific goal to cancel the Waste Management contract and direct the waste disposal to River Birch.

As a result, Waste Management seeks declaratory relief declaring Parish Resolution No. 111491, which approved a contract proposal by River Birch, and Parish Resolution No. 12564, which ultimately approved the proposed contract between Jefferson Parish and Birch River, illegal and invalid. It also seeks a declaratory judgment finding the actual contract between Jefferson Parish and River Birch invalid and illegal.

As to the instant motion, Waste Management conducted the deposition of Gwen Bolotte, the Director of Jefferson Parish's Finance Department, on December 20, 2010. Waste Management requested that certain documentation be produced at the deposition. Bolotte produced documentation, and also provided a privilege log which listed a single document. The document was withheld on the basis of attorney-client privilege and was described as "Letter 6/22/09 Tom Wilkinson, Parish Attorney to Parish Council/Administration re Waste Management Landfill Contract and Proposed River Birch Contract."

In addition, Waste Management served Deano Bonano, the Deputy Chief Administrative

3

Assistant of Jefferson Parish in charge of the Environmental Affairs Department in 2004, with a subpoena duces tecum. Waste Management was provided with some documentation in response to the subpoena but also received a privilege log. Waste Management originally sought to compel the production of 10 of the 11 documents listed on the privilege log. However, at the discovery conference held on April 23, 2011, the parties informed the Court that they had reached a mutual agreement on the issue with respect to some documents listed on the log and the only remaining dispute related to the documents described on the privilege log as follows:(1) Memo 3/2/04 D. Bonano to Tom Wilkinson, Parish Attorney, re legal opinion on request by Waste Management to extend Landfill contract; (2) Opinion 3/2/04 Tom Wilkinson, Parish Attorney, to Council/Administration re request by Waste Management to extend Landfill Contract; and (3) Opinion 10/11/04 Tom Wilkinson, Parish Attorney, to Council/Administration re non-appropriation clause in Landfill Contract.

Waste Management contends that the documents listed on both Bolotte's and Bonano's privilege logs were improperly withheld. Specifically, Waste Management contends that the Plaintiffs have waived the attorney-client privilege with respect to these documents and as such, the documents should be produced. The Plaintiffs oppose the motion.

## II.     Standard of Review

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials.

*Hebert v. Lando,* 441 U.S. 153, 176 (1979).  Nevertheless, discovery does have "ultimate and necessary boundaries."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).  Furthermore, "it is well established that the scope of discovery is within the sound discretion of the trial court."  *Coleman v. Amer. Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Under Rule 26(b)(2)(c), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. Fed.R.Civ.P. 26(b)(2)(c).  In assessing whether the burden of the discovery outweighs the benefit, a court must account for: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues.  *Id*.

**III.** **Analysis**

    **A.** **Gwen Bolotte's Privilege Log**

The parties do not contest that the June 22, 2009, letter from the Parish Attorney, Tom Wilkinson, to the Parish council and administration are privileged.  Rather, the parties contest whether the privilege has been waived because it was provided to Gwen Bolotte, the Director of Jefferson Parish's Finance Department and Rick Buller, the Parish's landfill Engineer.

Waste Management contends that the distribution of the document was not restricted to the "client" which it defines as a Parish official with legal decision-making authority. (R. Doc. 167, p. 3.)  It contends that because the communication was distributed to at least one parish official who "did not need to know" its contents, the attorney-client privilege has been waived.

Waste Management argues that under federal attorney-client jurisprudence, whether there has been a "waiver" of the attorney-client privilege depends on whether a communication was disseminated to employees who "need to know" of the contents, or instead of distributed the communication with the goal of "keeping everyone on the same page." (R. Doc. 167, p. 3.) It further contends that under *Upjohn Co. v. United States*, 449 U.S. 383 (1981), the Court must inquire as to whether the employee who was party to the communication had information which was necessary to facilitate the rendering of legal advice. (R. Doc. 167, p. 4.)

Waste Management avers that neither Bolotte nor Buller were individuals who "needed to know" the contents of the communication. It argues that Bolotte's position as the Parish's Finance Director is strictly concerned with budgetary concerns. Further, Buller is an engineer, which makes him most knowledgeable regarding engineering issues and costs associated with landfill operations, but whose job description does not include any budgetary functions. (R. Doc. 167, p. 4.) Further, Waste Management contends that because neither Bolotte nor Buller are Parish employees charged with the decision of whether to use the appropriation dependency clause to prematurely terminate the Parish's Landfill Contract with Waste Management, it was not necessary that either party receive the communication. As such, Waste Management urges this Court to find waiver of the attorney-client privilege.

In response, the Plaintiffs contend that Waste Management has improperly relied on federal attorney-client privilege jurisprudence. The Plaintiffs contend that in this diversity matter, state law applies which extends the privilege to any employee of the client in connection with their duties. The Plaintiffs further aver that even if the Court were to apply federal law, Waste Management's argument that the attorney-client privilege has been waived is without merit. Specifically, the

Plaintiffs contend that both Bolotte and Buller's various job roles put them on a "need to know" basis in regards to the contents of the disputed communication. In support, the Plaintiffs pointed to portions of Bolotte and Buller's deposition transcripts which relate to their job functions within the Parish.

State law applies to considerations of attorney-client privilege where as here, the Court has diversity jurisdiction. *Dunn v. State Farm & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991). Louisiana attorney-client privilege law is codified at Louisiana Civil Code of Evidence Article 506(B). It provides that a client has the privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication whether oral, written, or otherwise, made for the purpose of facilitating the rendition of professional legal services to the client. La. Code of Evid. Art. 506(B). A communication is "confidential" if it is not intended to be disclosed to persons other than: (a) those to whom disclosure is made in furtherance of obtaining or rendering professional legal services for the client; (b) those reasonably necessary for the transmission of the communication; and (c) when special circumstances warrant, those who are present at the behest of the client and are reasonably necessary to facilitate the communication. La. Code. of Evid. Art. 506(A)(5).

In Louisiana, confidential communications between the following individuals are privileged: (1) between a client or a representative of the client and the client's lawyer or a representative of the lawyer; (2) between the lawyer and a representative of the lawyer; (3) by the client or his lawyer, or a representative of either, to a lawyer, or representative of a lawyer, who represents another party concerning a matter of common interest; (4) between representatives of the client or between the client and a representative of the client; (5) among lawyers and their representatives representing

7

the same client; and (6) between representatives of the client's lawyer. La. Code of Evid. Art. 506(B).

Waste Management improperly argued that, pursuant to federal law, the attorney-client privilege has been waived because the document was distributed to individuals who did not necessarily "need to know" the contends of the e-mail. Although Waste Management cited to incorrect federal law, their arguments do relate to whether the communication itself was confidential. Because the attorney client privilege, under applicable Louisiana law, only applies to communications which were not intended to be disclosed to persons other than "those reasonably necessary for the transmission of the communication," the Court will consider Waste Management's arguments in this context.

The contested documentation relates to the financial implications regarding the Waste Management contract and the River Birch proposal. At Buller's November 29, 2010, deposition, he testified as to preparing a financial comparison regarding the "cost of continuing to operate [the Parish's] landfill under the Waste Management contract or to close the landfill and begin sending all the waste to the River Birch Landfill." (R. Doc. 99-4, p. 39; Buller Deposition Transcript, pp. 152-153.) This comparison is directly related to the contents of the disputed documentation. As such, the Court finds that Waste Management has demonstrated that Buller was reasonably necessary for the transmission of the communication such that the document is confidential and protected by the attorney-client privilege. To the extent that Waste Management seeks an Order finding the attorney-client privilege waived because it was produced to Buller, the request is denied.

As to the production of the document to Bolotte, the Director of Jefferson Parish's Finance Department, the Court similarly finds that she was reasonably necessary for the transmission of the

communication. According to Waste Management's initial submissions,

> Ms. Bolotte has provided sworn testimony that it is she and her department that have the responsibility for preparing and submitting the Parish Operating Budgets to the Council for approval. Furthermore, Ms. Bolotte testified that she was given curious and completely unexplained directives from Parish officials, in particular, Tim Whitmer, during this time period with regard to how and where to allot money within the Landfill Division portion of the Operating Budget.

(R. Doc. 125-2, p. 4.) The contested document relates to the alleged savings in a contract in favor of River Birch instead of the existing contract with Waste Management. This is directly related to budget issues. As such, Bolotte, as an individual who Waste Management concedes is responsible in preparing budgets to the council for approval, would reasonably be included in the distribution of this e-mail as her position would require her to be apprised of any potential changes in the Parish budget.

Further, the Court is not persuaded by Waste Management's contention that this document should only be produced to those individuals who are charged with the decision as to whether the use of the appropriation dependency clause to prematurely terminate the Parish's Landfill Contract with Waste Management in order to maintain the privilege. (*See* R. Doc. 167.) River Birch provides no authority for the proposition that only communication with ultimate decision makers are protected by the attorney-client privilege. Although neither Bolotte nor Buller seemingly have the authority to make the final determination, certainly those individuals with information which contribute to the ultimate determination may be considered "reasonably necessary" as required by applicable law. As such, the Court finds that this document was properly reflected on Bolotte's privilege log and need not be produced.

### A. Dean Bonano's Privilege Log

At the April 21, 2011, discovery conference the only documents which were contested from

Bonano's privilege log were described as follows: "(1) Memo 3/2/04 D. Bonano to Tom Wilkinson, Parish Attorney, re legal opinion on request by Waste Management to extend Landfill Contract; (2) Opinion 3/2/04 Tom Wilkinson, Parish Attorney, to Council/Administration re request by Waste Management to extend Landfill Contract; and (3) Opinion 10/11/04 Tom Wilkinson, Parish Attorney, to Council/Administration re non-appropriations clause in Landfill Contract." At the conference, the Court reviewed the first two documents and found that they invoked the attorney-client privilege and were properly included in the log. Neither supplemental submission addresses this finding or makes any arguments regarding waiver. Instead, the supplemental submissions relate solely to the third document and whether the attorney client privilege has been waived. As such, the Court's ruling at the conference remains and the only remaining issue relates to the October 11, 2004 document.

The document at issue is a letter dated October 11, 2004, from Parish Attorney, Wilkinson, to Parish Council Members and Tim A. Whitmer, former Chief Administrative Offer for Jefferson Parish. The subject line of the correspondence is "Non-Appropriations Clause in Time Contract for Parish Landfill." At the April discovery conference on this matter, the document was provided to the Court for an *in camera* inspection.

Waste Management asserts that either the document itself, or the substance of the document, were disclosed to James Gill, a writer for the New Orleans newspaper, The Times-Picayune. Specifically, Waste Management contends that in Gill's December 19, 2004, article, entitled "Some Interests Can't Help But Conflict," Gill specifically refers to statements made by Wilkinson regarding the use of the annual appropriations clause. Waste Management contends that because Wilkinson disclosed either the letter or its substance to a third party, the attorney client privilege has

been waived. As such, the Plaintiffs should be compelled to produce the document.

The Plaintiffs contend that Waste Management has provided no factual basis for their speculation that the Parish Attorney waived the privilege by speaking with, or providing the memorandum to, Gill. Further, the Plaintiffs contend that even if the Parish Attorney spoke with or provided the memorandum to Gill, this would not waive the privilege because the privilege may only be waived by the Parish.

The Plaintiffs contend that the focus of the inquiry should be the Parish's intended use of the protective communication. Specifically, they contend that the Court should consider whether the Parish has committed itself to a course of action that would require the disclosure of the privileged communication. The Plaintiffs contend that they do not intend to utilize this communication in the above captioned matter nor will they be forced to draw upon this communication at trial in this matter in order to prevail. The Plaintiffs urge that the issue in this matter is a judicial determination as to the duties and obligations of the parties in the event the Parish exercises the Annual Appropriations clause of the contract. As such, opinions by attorneys relating to this matter are irrelevant to the Court's determination.

The Plaintiffs contend that Waste Management has the burden of demonstrating that the attorney-client privilege was waived. However, it failed to provide any first hand information from Gill which demonstrates that Wilkinson was the source of the information in his article. Furthermore, the Plaintiffs contend that newspaper articles are hearsay evidence.

The Plaintiffs aver that even assuming *arguendo* that Wilkinson divulged this information to Gill, the Plaintiffs aver that no waiver would result because Wilkinson is not in a position to waive the attorney-client privilege. Instead, the Parish, as the holder of the privilege has the sole

authority to waive the privilege.

Finally, the Plaintiffs contend that Gill's article only relates to a "snippet" of information contained within Gill's article. The Plaintiffs argue that "[o]nly disclosure of a significant part of a confidential communication waives the privilege as to the whole." (R. Doc. 168, p. 10.) The Plaintiffs contend that Gill's article only relates to a small portion of Wilkinson's memoranda, and as such, no waiver results.

In response, Waste Management contends that it is the Plaintiff's burden, rather than Waste Management's, to establish that the attorney-client privilege has not been waived. Further, even if it had the burden, Waste Management contends that Gill's article is compelling evidence to establish that there has been a waiver.

Waste Management further contends that the Plaintiff's argument that only Jefferson Parish, and not its attorney, may waive privilege is without merit. Waste Management contends that the Parish Attorney may waive the privilege when an attorney discloses a communication with the client's authority. Waste Management contends that it is the Plaintiff's burden to demonstrate that it did not authorize, or was displeased, with Wilkinson's disclosure of the memorandum. Their failure to do so demonstrates that the disclosure was performed with the knowledge and authorization of the Parish and as such, the attorney-client privilege has been waived.

Under Louisiana law, "[a] person upon whom the law confers a privilege against disclosure waives the privilege if he or his predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the privileged matter. This rule does not apply if the disclosure itself is privileged." La. Code Evid. 502(A). Under Louisiana Law, the party seeking to assert the attorney-client privilege has the burden of proving that the privilege applies. *Smith v.*

*Kavanaugh, Pierson & Talley*, 513 So.2d 1138, 1143 (La. 1987).

Both parties agree that *In re Shell Refinery,* 812 F. Supp. 658 (E.D. La. 1993) sets forth the party who has the burden of demonstrating that the attorney-client privileged applies and has not been waived. However, they disagree as to which party has the burden.

In *In re Shell Refinery* the court held that "the burden of substantiating a claim of privilege falls upon the party asserting the privilege. 812 F.Supp. at 661. *In re Shell Refinery* then defined the elements necessary to establish the attorney-client privilege. These elements include establishing that the privilege has not been waived.[2] *Id.* As such, the Plaintiffs, rather than Waste Management, has the burden of establishing the applicability of the attorney/client privilege and that it has not been waived.

> In his article, Gill stated:
>
> But to cancel the Waste Management contract before it expires would almost certainly provoke a lawsuit. Some members of the council are evidently planning to give Waste Management the early heave-ho anyway, and Parish Attorney Tom Wilkinson has even suggested how they might go about it.
>
> The council, according to Wilkinson, could just neglect to include the Waste Management fees in the budget one year. That may be a brilliant idea, except that Wilkinson concedes the parish might be found liable in court unless it could prove that Waste Management had been stiffed "in good faith." No, I don't understand how that could be either.

James Gill, *Some Interests Can't Help but Conflict*, The Times-Picayune, December 19, 2004. This, alone, suggests a communication between Wilkinson and Gill. An *in camera* inspection of the

---

[2]Specifically, In Shell Oil sets forth the elements of establishing the attorney-client privilege as follows:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the communication is made to an attorney or his subordinate, in his professional capacity; (3) the communication is made outside the presence of strangers; (4) for the purpose of obtaining an opinion on the law or legal services and (5) the privilege is not waived.

*Id.*

contested document, when compared to the article bolsters this suggestion. The article was released only two months after Wilkinson's document was drafted and Gill's article directly references the substance of the document. As such, the Court finds that the Plaintiffs failed to sustain its burden of demonstrating that Wilkinson did not disclose the information to third parties. Therefore, the only issue remaining before the Court is whether Wilkinson had the authority to waive the attorney client privilege.

The client is the holder of the attorney-client privilege. *Smith v. Kavanaugh, Pierson & Talley*, 513 So.2d 1138, 1143 (La. 1987). The privilege may be waived only by the client, or his attorney or agent acting with his authority, or his representative may exercise this power. *Id.*

In their submissions, the Plaintiffs only argue that even if the Parish Attorney spoke to Gill in reference his communication, Wilkinson was not capable of waiving the attorney-client privilege. The Plaintiffs do not make any arguments much less provide any evidence, that the Parish did not authorize the Parish Attorney to communicate with Gill regarding the substance of the disputed document. As a result, the Plaintiffs have failed to meet their burden of establishing that Wilkinson, its agent, lacked the authority granted by the Parish to waive the privilege as to the subject document such that it must be produced.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that **Waste Management's Motion to Reconsider Motion to Compel Production of Documents (R. Doc. 125)** is hereby **GRANTED IN PART** and **DENIED IN PART:**

- The motion, insofar as it seeks to compel document 9 on Bonano's privilege log, described as "Opinion 10/11/04 Tom Wilkinson, Parish Attorney, to

      Council/Administration re non-appropriations clause in Landfill Contract" is hereby **GRANTED**. The document shall be produced within **seven (7) days** of the signing of this Order.

- The motion, insofar as it seeks the production of documents listed on Bonano's privilege log described as "Memo 3/2/04 D. Bonano to Tom Wilkinson, Parish Attorney, re legal opinion on request by Waste Management to extend landfill contract" and "Opinion 3/2/04 Tom Wilkinson, Parish Attorney, to Council/Administration re request by Waste Management to extend Landfill Contract" is hereby **DENIED** as per the Court's findings at the April 21, 2011, discovery conference.

- The motion, insofar as it seeks the production of the document listed in Bolotte's privilege log, described as "Letter 6/22/09 Tom Wilkinson, Parish Attorney to Parish Council/Administration re Waste Management Landfill Contract and Proposed River Birch Contract" is hereby **DENIED.**

- The motion, in all other respects, is **DENIED AS MOOT** as per the mutual agreement of the parties represented to the Court at the April 21, 2011, discovery conference.

**IT IS FURTHER ORDERED** that the Plaintiffs shall retrieve the documents provided for *in camera* inspection from the undersigned's Chambers **no later than (5) days** from the signing of this Order. If the Plaintiffs fail to retrieve the documents within this time frame, the Court will destroy the documentation.

      New Orleans, Louisiana, this 11th day of August, 2011.

      **KAREN WELLS ROBY**
      **UNITED STATES MAGISTRATE JUDGE**