UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JEFFERSON PARISH CONSOLIDATED GARBAGE DISTRICT NO. 1, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 09-6270** |
| **WASTE MANAGEMENT OF LOUISIANA, L.L.C., ET AL.** | **SECTION: "B" (4)** |

## ORDER

Before the Court is a **Motion for Leave to File Third Amended and Supplemental Counterclaim (R. Doc. 207)**, filed by Defendant Waste Management of Louisiana, L.L.C. ("Waste Management") seeking an Order from this Court granting it leave to file a Third Amended and Supplemental Counterclaim ("Third Counterclaim"). Plaintiffs Jefferson Parish Consolidated Garbage District No. 1, *et al.* (collectively, "Plaintiffs"), opposes the motion. ( R. Doc. 218) The motion was heard with oral argument on September 28, 2011.

**I.     Background**

This action arises out of the alleged breach of various contracts pertaining to waste disposal in Jefferson Parish, Louisiana. Plaintiffs filed this action seeking a declaratory judgment that their landfill contract with Waste Management be terminated without penalty or expense. (R. Doc. 1-2, ¶¶ 15, 48.) Plaintiffs further seek liquidated damages pursuant to the contract, and a declaratory judgment relating to certain rights and obligations under the contract. (R. Doc. 1-2, ¶ 48.)

On June 29, 2010, Waste Management filed a counterclaim against Plaintiff Jefferson Parish

Council ("Jefferson Parish Council")in its capacity as governing authority of the Jefferson Parish Consolidated Garbage District No. 1 for alleged breaches of the parties' Collection Contract and Landfill Contract. (R. Doc. 74.) Waste Management seeks damages plus interest and attorney's fees. (R. Doc. 74, *Prayer*.)[1]

According to Waste Management's First Amended and Supplemental Counterclaim, in September 2008, Jefferson Parish Council issued Request for Proposal ("RFP") Number 176 ("RFP 176"). (R. Doc. 128, ¶ 31.) Waste Management alleges that the original purpose of the RFP was to solicit bids to reduce landfill waste and promote recycling. (R. Doc. 128, ¶¶ 24-25.) Waste Management alleges, however, that the RFP was improperly revised by Jefferson Parish President, Aaron Broussard, and Chief Administrative Officer, Tim Whitmer, and worded "so broadly that it solicited proposals to divert any type of waste in any quantity from the Parish landfill." (R. Doc. 128, ¶¶ 26, 31.) Waste Management further alleges that the process of obtaining bids was improperly rushed so as to permit River Birch, Inc. ("River Burch") to obtain the contract. (R. Doc. 128, ¶¶ 32, 51.) Waste Management further alleges that on December 9, 2009, River Birch submitted its response to RFP No. 176, which offered a contract which would result in the diversion of 100% of the waste from Jefferson Parish Sanitary Landfill to River Birch Landfill, conditioned on Jefferson Parish permanently closing its landfill. (R. Doc. 128, ¶ 36.) The proposed contract also required that the Parish prematurely cancel the contract with Waste Management. Id. As a result, Waste Management filed its First Amended and Supplemental Counterclaim seeking a declaratory judgment that Jefferson Parish Resolution No. 111491, which approved a contract proposal by River Birch, and

---

[1]On June 29, 2010, Waste Management filed a motion for leave to file a First Amended and Supplemental Counterclaim, which added a seventh counterclaim against Plaintiff Jefferson Parish Council. (R. Doc. 104.) The motion was granted, and Waste Management's First Amended and Supplemental Counterclaim was entered into the record on February 23, 2011. (R. Docs. 127-128.)

Jefferson Parish Resolution No. 12564, and the actual contract between Jefferson Parish and River Birch, be invalided. (R. Doc. 128, *Prayer*.)

As to the instant motion, Waste Management alleges that on February 25, 2011, the Jefferson Parish Council issued RFP Number 0227 ("RFP 0227"), which solicited proposals for operation of the Jefferson Parish Landfill following the natural expiration of the Landfill Contract with Waste Management. Waste Management alleges that this latest effort is another attempt to improperly oust it as the operator of the Jefferson Parish Landfill. Waste Management further alleges that the Jefferson Parish Council improperly conducted the proposal approval process and violated its own laws and procedures.

As such, Waste Management seeks injunctive relief to prevent the continued negotiation of the contract for which it was not selected, even though it allegedly received the highest score of all the proposals. Waste Management characterizes the ultimate selection of a different company, IESI Corporation ("IESI"), as illegal, arbitrary, and capricious. It therefore seeks an order from this Court protecting its interests against the actions of the Jefferson Parish Council.

**II.     Standard of Review**

Federal Rule of Civil Procedure ("Rule") 15(a)(2) governs the amendment of pleadings and provides that a "court should freely give leave when justice so requires." The Rules "reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957).

Thus, Rule 15(a) evinces a liberal amendment policy and a motion to amend should not be denied absent a substantial reason to do so. *See Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir.

3

1998).  Furthermore, "this 'policy' is strongest when the motion challenged is the first motion to amend." *Thompson v. New York Life Ins. Co.*, 644 F.2d 439, 444 (5th Cir. 1981).  Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense. *Id.*

However, leave to amend is by no means automatic. *Addington v Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981).  The decision to grant or deny a motion for leave to amend lies within the sound discretion of the trial court.  *Id*.  In exercising its discretion, the trial court may consider such factors as: (1) undue delay, bad faith, or dilatory motive by the movant; (2) the repeated failure to cure deficiencies by previously allowed amendments; (3) undue prejudice to the opposing party if the amendment is allowed; and (4) futility of the amendment.  *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981).

### III.     Analysis

Waste Management contends that despite this ongoing litigation the Jefferson Parish Council continues to attempt to enter into illegal contracts for the provision of waste management services to its citizens.  Particularly, Waste Management seeks leave to file this Third Counterclaim to assert a claim against the Jefferson Parish Council for its decision to prospectively hire IESI, which allegedly received a lower proposal score than Waste Management.

#### A.     Timeliness

On June 29, 2011, the parties submitted a proposed joint scheduling order which was granted by the Court on June 30, 2011.  (R. Docs. 183-84.)  On July 8, 2011 the presiding Judge set the deadline for filing counter-claims, amendments and cross claims for September 9, 2011.  (R. Doc. 185.)  Waste Management filed the instant motion on September 1, 2011, some eight days before the

4

deadline to amend pleadings. (R. Doc. 207.)

### B. Undue Delay, Bad Faith or Dilatory Motive

Further, there is no indication that Waste Management has filed the amendment with undue delay, bad faith, or dilatory motive. The amendment was filed within the time frame permitted by the presiding Judge. Further, under the Scheduling Order, the discovery deadline is not until January 30, 2012, and the trial is not scheduled until March 19, 2012. Furthermore, there is no indication that Waste Management has repeatedly failed to cure deficiencies by previously allowed amendments. This Waste Management's third attempt to amend its counterclaim. The Court further finds no indication that prejudice would result if the amendment is allowed.

### C. Futility

In opposition, Plaintiffs contend that the amendment would be futile because the Court lacks jurisdiction over the claims asserted in the proposed Third Counterclaim. Plaintiffs further contend that the proposed Third Counterclaim is futile because (1) the claim does not allege diversity jurisdiction as there is no amount in controversy in the pleading, and (2) there is no federal question in the proposed Third Counterclaim, thus, the Court lacks jurisdiction over the proposed Third Counterclaim. Plaintiffs further contend that because the counterclaim is a permissive counterclaim, it must have its own jurisdictional basis. Finally, Plaintiffs contend that because there is no connection between RFP 176 and RFP 0277, denial of Waste Management's motion for leave would not bar Waste Management's ability to pursue the proposed claims at a later date.

In support of its motion, Waste Management contends that its claim is not futile because the Court has subject matter jurisdiction over the proposed Third Counterclaim; Waste Management and Plaintiffs are citizens from different states and the amount in controversy, if aggregated, would satisfy

5

the jurisdictional amount requirement. Waste Management further contends that the value of the proposed Third Counterclaim is the value of the contract that it was not awarded, which is well in excess of the jurisdictional requirement.

A permissive counterclaim is one that a defendant "may" assert against a plaintiff that does not arise out of the transaction or occurrence as plaintiff's claim. Fed.R.Civ.P. 13(b). To determine whether a claim is a compulsory counterclaim, the Fifth Circuit applies the test articulated in *Tank Insulation Int'l, Inc. v. Insultherm, Inc.*, 104 F.3d 83(5th Cir.1997) which asks: (1) whether the issues of fact and law raised by the claim and counterclaim largely are the same; (2) whether *res judicata* would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule; (3) whether substantially the same evidence will support or refute plaintiff's claim and defendant's counterclaim; and (4) whether there is any logical relationship between the claim and the counterclaim. *Id.* at 85-86 (citing *Park Club, Inc. v. Resolution Trust Corp.,* 967 F.2d 1053, 1058 (5th Cir.1992)). If the answer to any of these four questions is yes, then the counterclaim is compulsory. *Id.* at 86.

In considering the *Tank Insulation* test, the Court finds that the issues raised by the claim and counterclaim are not largely the same. The original claim was instituted by Plaintiffs against Waste Management alleging breach of a contract to operate the Jefferson Parish Landfill through the conclusion of Phase III of the landfill. In contrast, the original counterclaim alleges that the 2009 waste disposal contract as between the Jefferson Parish Council and River Birch was illegal.

Waste Management's proposed Third Counterclaim seeks an order declaring the Jefferson Parish Council's prospective contract with IESI illegal, as the bid process set forth by the Jefferson Parish Council was not adhered to. Waste Management's proposed Third Counterclaim further seeks

to enjoin the continued contract discussions between the Jefferson Parish Council and IESI. None of the *Tank Insulation* factors are present in the proposed Third Counterclaim; (1) the issues involve two separate contracts, (2) *res judicata* would not bar Waste Management's proposed Third Counterclaim because it involves different parties with different issues; and (3) different evidence would be presented to prove Plaintiffs' claim and Waste Management's proposed Third Counterclaim.

Having determined that Waste Management's proposed Third Counterclaim is permissive, the Court must now consider whether there is an independent basis for jurisdiction such that Waste Management should be permitted to purse a claim against a different company, IESI, concerning generally the prospective waste management contract. As Waste Management's permissive counterclaim would require an independent basis of subject matter jurisdiction in order to permit adjudication by the Court absent Plaintiffs' claims, the Court must determine whether the proposed Third Counterclaim meets the requirements of diversity of citizenship jurisdiction under 28 U.S.C. § 1332.

Plaintiffs do not dispute that the citizenship requirement has been met. They do, however, suggest that the proposed pleading fails to set forth an amount in controversy. Therefore, the issues before the Court are:(1) whether the value of the lost contract would be sufficient to establish the jurisdictional amount in controversy; and alternatively (2) whether the amended counterclaims can be aggregated to establish an amount in controversy in excess of the jurisdictional amount in controversy.

A federal court has subject matter jurisdiction over cases in which the parties are of diverse citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. §1332(a)(1). The amount in

controversy is the amount required to satisfy the plaintiff's demands in full on the day the suit begins, or in the event of removal, on the day the suit was removed." *Oshana v. Coca-Cola Co.,* 472 F.3d 506, 511 (7th Cir. 2006) (citations omitted). The proponent of jurisdiction "has the burden of showing by a preponderance of the evidence facts that suggest the amount-in-controversy requirement is met." *Id.; see McMillian v. Sheraton Chicago Hotel & Towers*, 567 F.3d 839, 844 (7th Cir. 2009). "To satisfy this burden, a party must do more than 'point to the theoretical availability of certain categories of damages.'" *Id.* (quoting *Am. Bankers Life Assurance Co. of Fl. v. Evans,* 319 F.3d 907, 909 (7th Cir. 2003)). The proponent of jurisdiction must support its assertion with "competent proof." *Oshana,* 472 F.3d at 511. When the complaint does not establish the amount in controversy, "a good-faith estimate of the stakes is acceptable if it is plausible and supported by a preponderance of the evidence." *Id.*

The amount in controversy is measured from the perspective of the plaintiff. *Vraney v. Cnty. of Pinellas*, 250 F.2d 617, 618 (5th Cir.1958) (per curiam). In an action for declaratory or injunctive relief, the amount in controversy is the "value of the object of the litigation," or "the value of the right to be protected or the extent of the injury to be prevented." *Leininqer v. Leininger*, 705 F.2d 727, 729 (5th Cir.1983).

Here, the object of the litigation is to prevent the <u>negotiation</u> of an allegedly illegal landfill disposal contract and protect the rights of Waste Management to be the rightful holder of the contract or otherwise suffer irreparable harm. (R. Doc. 207, ¶ 93.) The complaint does not set forth an amount in controversy. Indeed, the proposed Third Counterclaim only seeks to prevent the entry of a contract. Further, it is not facially apparent that damages would likely be incurred if the negotiations were allowed to continue. It is possible that the Jefferson Council Parish and IESI may

not be able to agree to a contract. Consequently, the Court finds that the proposed Third Counterclaim is futile, and the Court would not have subject matter jurisdiction over the matter.

The final issue for the Court to consider is whether it could exercise supplemental jurisdiction over the proposed Third Counterclaim. In support of its motion, Waste Management contends that the Court has jurisdiction over the proposed Third Counterclaim based upon 28 U.S.C. § 1367, which was supplanted and now only requires that a counterclaim form part of the "same case or controversy."

In opposition, Plaintiffs argue that the Court's supplemental jurisdiction cannot form the basis of jurisdiction because the proposed Third Counterclaim is permissive and not compulsory. Therefore, Plaintiffs contend the Court lacks subject matter jurisdiction.

According to 28 U.S.C. § 1367, which establishes supplemental jurisdiction, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Supplemental jurisdiction promotes "judicial economy, convenience, and fairness to litigants." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

In considering this issue, the Court is of the opinion that the claims asserted in Waste Management's proposed Third Counterclaim are not so related to the claims in this action that they form the same case or controversy as required by 28 U.S.C. § 1367(a). In the original action, the Plaintiffs filed suit seeking a determination by the Court that Waste Management breached the waste management contract. Waste Management responded with a counterclaim alleging that the Jefferson

Parish Council's efforts to cancel its contract with Waste Management and pursue a contract with River Birch landfill was illegal and that the contract should be invalidated.

Here, the acts in question are totally different. Waste Management's proposed Third Counterclaim involves the Jefferson Parish Council's efforts to contract for the discarding of its waste at the conclusion of its contract with Waste Management, and its decision to select a company other than Waste Management to provide services to it in the future. Clearly, the claims asserted in Waste Management's proposed Third Counterclaim are not so related that they could possibly involve the same controversy, as they involve one executed and one pending contract, negotiated at different times between different parties and under different circumstances. The court therefore declines to exercise supplemental jurisdiction over Waste Management's proposed Third Counterclaim.

**IV.     Conclusion**

Accordingly,

**IT IS ORDERED** that Waste Management of Louisiana, L.L.C.'s **Motion for Leave to File Third Amended and Supplemental Counterclaim (R. Doc. 207)** is hereby **DENIED for the reasons assigned herein.**

New Orleans, Louisiana, this 16th day of November 2011.

**KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE**